UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **William Darryl Martin and** | ) | 10-81271 13 |
| **Paula Parson Martin,** | ) | |
| | ) | |
| **Debtors.** | ) | |
| | ) | |

## ORDER AND OPINION DENYING
## CONFIRMATION OF PLAN

THIS MATTER came before the Court on December 2, 2010, after due and proper notice, for a hearing on the Debtors' proposed Chapter 13 plan. Edward C. Boltz appeared at the hearing on behalf of the Debtors and Benjamin Lovell appeared on behalf of the Chapter 13 Trustee. Having considered the proposed plan, the evidence offered at the hearing, and other matters of record, the Court makes the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure:

## BACKGROUND FACTS

The Debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code on July 20, 2010 (the "Petition Date"). The male Debtor is the Chief Water Plant Operator for the Orange County Water and Sewer Authority and the female Debtor is unemployed. The Debtors have two dependent children, a son age 10 and another son age 24. According to their B22C, the Debtors have below-median income in the amount of $4,288.00 per month.

On their Schedule A, the Debtors listed an interest in one parcel of real property. The real property, the Debtors' primary residence, consists of a mobile home and lot located at 325 Kimberly Lane, Siler City, North Carolina (the "real property"). The current value of the Debtors' interest in the property is listed at $62,052.60, and the property is listed as subject to a

secured claim in the amount of $132,429.97.

Colonial Savings ("Colonial") filed a proof of claim in the amount of $134,391.64 on August 23, 2010. The proof of claim indicates that Colonial's claim is secured by a deed of trust on the Debtors' real property. The deed of trust and accompanying adjustable rate note were attached to Colonial's proof of claim. The note asserts the principal balance of the loan was $144,728.00, to be repaid over a term of 30 years at a rate of $861.81 per month with an adjustable interest rate to begin at 4.5%. In addition, the proof of claim asserts a pre-petition arrearage of $2,527.17.

On September 8, 2010, the Debtors filed a notice of proposed Chapter 13 plan providing for monthly payments to the Chapter 13 Trustee in the amount of $1,392.00 for 36 months. The proposed plan submits that, because the claim of Colonial is secured by a deed of trust on the real property and the Debtors' interest in an escrow account for payment of taxes and insurance, the anti-modification provisions of 11 U.S.C. §1322(b)(2) do not apply to the claim of Colonial. As such, the proposed plan provides as follows:

> The Debtors propose that the mortgage with Colonial shall be modified to re-amortize the $62,052.60 fair market value of the real property over a term of 108 months, from November of 2010 to October of 2019, at a permanently fixed interest rate of three and one-half percent (3.5%) per annum. The Debtors propose principal and interest payments of $668.59 for the remaining term of the modified loan. Colonial is entitled to escrow payments of $193.22 per month; therefore, Colonial shall be allowed a long-term continuing debt through the plan with payments of $861.81 per month effective September of 2010. The arrearage through August of 2010 is re-amortized into the mortgage loan; therefore, no payments shall be made on the arrearage claim of Colonial.
>
> Failure to file a timely objection to this plan shall constitute acceptance of this plan by Colonial, pursuant to 11 U.S.C. § 1325(a)(5)(A). In the event that Colonial objects to the periodic payments extending beyond the length of the plan, the Debtors shall distribute, pursuant to 11 U.S.C. § 1325(a)(5)(B)(ii), property to Colonial in the form of a new deed of trust complying with the beforementioned terms. This modification shall be deemed to be in compliance with the requirements of HAMP and the Debtors and Colonial shall be entitled to

any allowed distributions from the United States Department of the Treasury under such program.

On September 8, 2010, Notice of the Proposed Plan and Order Confirming Plan and Time for Filing Objections Thereto was transmitted to all parties in interest. The Notice provided that objections to the proposed plan must be filed and served within 28 days of the date of the Notice. The Notice also provided that "There will be no hearing on Confirmation unless a timely objection is filed *or* a hearing is ordered."

Colonial did not file an objection. On September 13, 2010, the Court entered an Order that a hearing should be held on the proposed plan and set a confirmation hearing for October 21, 2010. The confirmation hearing was continued to December 2, 2010. Colonial did not appear at the confirmation hearing and did not file a written objection.

## ISSUE PRESENTED

The primary issue is whether the Debtors' proposed plan complies with the requirements of § 1325 even though the plan proposes to modify the terms of the Debtors' mortgage by decreasing the principal of the original loan, instituting a fixed interest rate that is significantly lower than the *Till* interest rate in place of the original adjustable interest rate, and re-amortizing any existing arrearage claim over the life of the new modified loan.

## DISCUSSION

Section 1325(a)(1) dictates that "[e]xcept as provided in subsection (b), the court shall confirm a plan if the plan complies with the other applicable provisions of this title." 11 U.S.C. § 1325(a)(1). This language bestows bankruptcy courts with the responsibility of ensuring that all confirmed plans adhere to the requirements of the Bankruptcy Code. *See*, *e.g.*, *In re Nicholes*, 184 B.R. 82, 87 (B.A.P. 9th Cir. 1995) ("When considering whether or not to confirm a Chapter 13 plan, a bankruptcy court must find that the plan complies with the provisions of Chapter 13

and with other applicable provisions of the Bankruptcy Code."); *In re Walton*, 340 B.R. 895, 897 (Bankr. S.D. Ind. 2006) (stating that "this Court will not confirm the Plan unless 'the plan complies with the provisions of this chapter and with other applicable provisions of this title'"); *In re Lee*, No. 00-31113S, 2000 WL 34532244, at *1 (Bankr. E.D. Va. Nov. 27, 2000) (holding that "[t]he court has an independent duty to determine whether or not a Chapter 13 plan satisfies the requirements of the law before confirming it").

Section 1322(b)(2) states that "[t]he plan may modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1322(b)(2). Furthermore, § 1322(b)(5) allows a debtor, "notwithstanding paragraph (2) of this subsection," to "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5). Together, sections 1322(b)(2) and 1322(b)(5) allow a debtor to bifurcate a "secured creditor's claim into secured and unsecured portions if the amount of the claim exceeds the value of the collateral securing the claim." *In re Bradsher*, 427 B.R. 386, 388 (Bankr. M.D.N.C. 2010). This bifurcation, however, cannot occur if the secured creditor's claim is secured only by real property that is the debtor's principal residence. *Id.*; § 1322(b)(2).

In *In re Bradsher*, the Middle District of North Carolina addressed the issue of whether escrow funds that were paid to Wells Fargo, the mortgagee, by the debtor constitute real property as defined in North Carolina. *Id.* at 389. According to the terms of the deed of trust in *Bradsher*, monthly payments were to include "principal and interest plus an additional sum to cover the

payment of 'escrow items' consisting of taxes and special assessment, leasehold payments or ground rents, and insurance premiums." *Id.* at 388. The court examined the contractual provisions regarding the escrow funds and held that "the Wells Fargo indebtedness is not secured solely by real estate that is the Debtor's principal residence and thus Wells Fargo is outside the protection from modification provided under section 1322(b)(2)." *Id.* at 391-92. In reaching this conclusion, the court reasoned that "[t]he escrow provisions do not characterize or describe the rights arising from such provisions as being a component of the land described in the deed of trust or as constituting a right or privilege belonging or appertaining to such land." *Id.* at 391. As was the case in *Bradsher*, Colonial's claim in the present case is secured by a deed of trust on the real property and the Debtors' interest in an escrow account. Therefore, the Debtors' proposed plan is correct in asserting that the anti-modification provisions of § 1322(b)(2) do not apply to the claim of Colonial.

Nonetheless, even though the anti-modification provision of § 1322(b)(2) does not apply in cases where the deed of trust is secured by both real property that is a debtor's principal residence and an escrow account, a debtor is not permitted to modify a mortgagee's claim without limitation. More specifically, "[p]ayments with respect to the secured portion of a bifurcated claim can extend beyond the life of the plan, *if* all provisions of § 1322(b)(5) are complied with." *In re Plourde*, 402 B.R. 488, 491 (Bankr. D.N.H. 2009) (emphasis in original). Thus, in order for a debtor to make payment on secured and unsecured claims after all scheduled Chapter 13 plan payments have been made, the plan must "provide for the curing of any default within a reasonable time and [provide for the] maintenance of payments while the case is pending. . . ." *In re Veliz*, No. 08-13292, 2009 WL 3418638, at *1 (Bankr. D.R.I. Oct. 16, 2009). Though the meaning of "maintenance of payments" is not defined in § 1322(b)(5), or elsewhere

in the Code, courts have interpreted the language to mean "the same principal and interest payments as provided in the note, within the time frame specified in the note." *Id.* (citing *In re McGregor*, 172 B.R. 718, 721 (Bankr. D.Mass. 1994)). Any alteration of the note's original terms will require a debtor to pay the secured claim in full during the life of the plan. *Id.* (citing *McGregor*, 172 B.R. at 721). Consequently, a debtor may continue to make payments on the secured portion of a bifurcated claim beyond the life of the plan only if the debtor cures any default during the life of the plan and continues to make payments at the contractual rate specified in the mortgage note. *Id.*

Alternatively, if a debtor chooses to modify the terms of the mortgage note, then the requirements of § 1322(d) are triggered, which requires that the full amount of the secured claim be paid over the life of the plan. *In re Hayes*, No. 10-81284C-13D (Bankr. M.D.N.C. Jan. 24, 2011); In *re Valdes*, No. 09-26712-BKC-AJC, 2010 WL 3956814, at *4 (Bankr. S.D. Fla. Oct. 4, 2010); *Plourde*, 402 B.R. at 491 (citing *In re Kheng*, 202 B.R. 538, 539 (Bankr.D.R.I. 1996)); *McGregor*, 172 B.R. at 721.[1] Cram down in a chapter 13 case permits valuation of the secured

---

[1] Section 1322(d) states:

(d)(1) If the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, in not less than—
    (A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
    (B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
    (C) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $575 per month for each individual in excess of 4, the plan may not provide for payments over a period that is longer than 5 years.
(2) If the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is less than—
    (A) in the case of a debtor in a household of 1 person, the median income

claim under § 506(a), with the secured claim holder retaining its lien and requiring the debtor to pay the value of collateral in installments over the *life* of the plan. While § 1322(b)(2) authorizes the plan proponent to rewrite the terms of the prepetition loan, the modifications must still comply with the confirmation mandates of § 1325(a)(5). Section 1325(a) makes clear that the holder of a secured claim retains the liens securing such claim until the earlier of "the payment of the underlying debt determined under nonbankruptcy law" or "discharge under section 1328." 11 U.S.C. § 1325(a)(5)(B)(i)(I)(aa)-(bb). This section makes clear that all partially secured claims must be paid in full during the life of the plan. The Code does not permit a debtor "to use § 506(a) in combination with § 1322(b)(5) to reduce the secured claim and repay the claim over a period exceeding the plan." *Valdes*, 2010 WL 3956814, at *4 (citing *In re Enewally*, 368 F.3d 1165, 1172 (9th Cir. 2004)). A debtor may choose one of two options—to 'cure and maintain' according to the original terms of the note, or to modify the terms of the note and complete payments of the secured portion of the claim within the life of the plan—but they may not choose both. As stated by the Ninth Circuit in *In re Enewally*, "'a chapter 13 debtor may not invoke both a modification of a secured creditor's claim under § 1322(b)(2) and the right to 'cure and maintain' over the life of the plan of the original loan as authorized under § 1322(b)(5).'" 368 F.3d at 1171. In the present case, however, by proposing to dramatically decrease the

---

of the applicable State for 1 earner;
(B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
(C) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $575 per month for each individual in excess of 4, the plan may not provide for payments over a period that is longer than 3 years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years.
11 U.S.C. § 1322(d).

principal and interest rate of the original mortgage, the Debtors propose a plan that clearly does not comply with provisions set forth in § 1322(b)(5). In fact, here, the Debtors are proposing to: (1) slash the principal of the original mortgage by $82,675.40; (2) institute a fixed interest rate that is lower than the initial adjustable rate provided in the adjustable rate note; (3) institute an interest rate lower than the *Till* interest rate[2]; and (4) re-amortize any existing arrearage over the life of the new loan.

In addition, the Debtors' proposed plan does not comply with 11 U.S.C. § 1325(a)(5)(B)(ii). Section 1325(a)(5), which governs the treatment of secured creditors, sets forth the three options a debtor has when dealing with secured claims. Because Colonial has not accepted the plan, see § 1325(a)(5)(A), and because the Debtors have not surrendered the property to Colonial, see § 1325(a)(5)(C), the present controversy concerns § 1325(a)(5)(B).[3] Section 1325(a)(5)(B) is known as the "cram down" option. *Associates Commercial Corp. v.*

---

[2]In *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004), the Supreme Court, in a plurality opinion, held that the appropriate interest rate for chapter 13 debtors is the national prime rate, modified by the bankruptcy court to compensate for the risk of nonpayment. In the Middle District of North Carolina, a presumptive *Till* rate is established by the chapter 13 trustees. *In re Evans*, No. 10-80446C-13D, 2010 WL 2976165, at *4 (Bankr. M.D.N.C. July 28, 2010). That rate is reviewed quarterly and, if necessary, is modified to compensate for the change in circumstances. *Id.* Barring any objections, the Middle District uses the presumptive *Till* rate in all chapter 13 cases to provide secured creditors with present value. *Id.* If a party does object, then parties are permitted to present evidence regarding the appropriate level of interest before the case goes forward. *Id.*

[3] Section 1325(a)(5) provides in pertinent part:

(A) the holder of such claim has accepted the plan;
(B)(i) the plan provides that the holder of such claim retain the lien securing such claim . . .
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
(C) the debtor surrenders the property securing such claim to such holder . . . .
11 U.S.C. § 1325(a)(5).

*Rash* (*Rash*), 520 U.S. 953, 957 (1997). The Supreme Court stated in *Rash* that:

> Under the cram down option, the debtor is permitted to keep the property over the objection of the creditor; the creditor retains the lien securing the claim, see § 1325(a)(5)(B)(I), and the debtor is required to provide the creditor with *payments, over the life of the plan*, that will total the present value of the allowed secured claim, *i.e.*, the present value of the collateral, see § 1325(a)(5)(B)(ii).

*Id.* (emphasis added). In the present case, the Debtors' proposed plan does not provide Colonial with payments, over the life of the plan, that total the present value of Colonial's allowed secured claim. Instead, the Debtors' proposed plan states that "[i]n the event that Colonial objects to the periodic payments extending beyond the length of the plan, the Debtors shall distribute, pursuant to 11 U.S.C. § 1325(a)(5)(B)(ii), property to Colonial in the form of a new deed of trust complying with the beforementioned terms." As the provision of a new deed of trust is not equivalent to periodic cash payments, the Debtors' proposed substitution does not meet the requirements of § 1325(a)(5)(B)(ii).

Debtors' counsel argues that Justice Thomas's concurrence in *Till* supports the notion that a new promissory note constitutes "property" under the Bankruptcy Code and therefore satisfies the debt within five years. In *Till*, Justice Thomas stated that "'property' can be cash, notes, stock, personal property or real property; in short, anything of value." *Till*, 541 U.S. at 488. The Court does not find Justice Thomas's opinion to be controlling in the present case. In essence, the Debtor proposes to swap out an old promise to pay with a new one. If a debtor could simply choose to provide a secured creditor with a new promissory note, as opposed to actually providing that creditor with value of the collateral, then § 1325(a)(5)(B)(ii) would be rendered meaningless. The Court does not believe this to be the intent of the Code. *Valdes*, 2010 WL 3956814, at *3. When faced with this same issue in *Russel v. Bank of New York Mellon*, the court stated that "[s]uch a conclusion would contradict the entire purpose of a 60-month time

limit on Chapter 13 reorganization." No. 1:10CV1362, 2010 WL 5300882, at *2 (Bankr. E.D. Va. Dec. 21, 2010). The distribution of a new promissory note does not amount to periodic cash payments and does not comply with § 1325(a)(5)(B)(ii). Thus, the Debtors proposed plan must be denied.

Debtors' counsel argues that, even though the proposed plan does not comply with the requirements of § 1322(b)(5), the plan should still be confirmed because Colonial's continued silence amounts to acceptance of the plan pursuant to § 1325(a)(5)(A). Section 1325(a)(5)(A) allows a proposed plan to be confirmed, despite not treating a secured claim in accordance with requirements of the Code, where the secured creditor holding the claim accepts the plan. 11 U.S.C. §1325(a)(5)(A). Yet, neither the Code, nor the Bankruptcy Rules, dictate the manner in which the holder of a secured claim is to accept a plan in a Chapter 13 case. Keith M. Lundin, Chapter 13 Bankruptcy § 101.2 (3d ed. 2007). This is different in cases under Chapter 11, where the voting process is clearly described by Rule 3018(c). *Id.* Because the Code does not recount how a secured creditor is to accept a proposed plan, many courts have held that a creditor's silence shall be interpreted as acceptance. *E.g., In re Mizell*, 260 B.R. 586, 588 (Bankr. S.D. Ga. 2000). While this may be the general rule, it is not true that silence amounts to acceptance in all circumstances.

Section 502(a) of the Code states that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Moreover, Rule 3001(f) dictates that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). It should be noted that while the Code requires unsecured creditors to file a proof of claim for their claims to be allowed, the same is not true for secured creditors. *See*

Fed. R. Bankr. P. 3002(a). This is because secured creditors can always rely on their collateral to satisfy their liens. *See, e.g., In re Bateman*, 331 F.3d 821, 827 (11th Cir. 2003). Regardless, the combination of § 502(a) and Rule 3002(a) provide that, unless a party in interest objects, the amount stated in a creditor's proof of claim is to be the amount the debtor repays under the plan. If a debtor disagrees with the amount stated in the a creditor's proof of claim, then the debtor may file an objection pursuant to Rule 3007. Rule 3007(a) describes the objection process in detail, stating that such objection "shall be in writing" and that a copy of such objection "shall be mailed or otherwise delivered to the claimant, the debtor or debtor in possession and the trustee at least 30 days prior to the hearing." Fed. R. Bankr. P. 3007(a).

In the present case, the Debtors failed to file an objection to Colonial's proof of claim. Instead, the Debtors stated their position regarding the treatment of Colonial's claim for the first time in their proposed plan. Rule 3007 does not permit a debtor to object to a creditor's claim in such a manner. As the Eleventh Circuit held in *In re Bateman*:

> Given the "deemed allowed" language of § 502, the explicit procedures set forth in Rule 3007 to effect a proper disallowance, the existence of a secured home mortgage claim, and the failure by the debtor here, not the creditor, to follow the proper procedures, we refuse to permit an inconsistent plan provision to constitute a constructive objection by reason of the Plan's notation of dispute alone . . . .

331 F.3d at 828. The same is true in the present case. Colonial's failure to object to the confirmation of the Debtors' proposed plan does not amount to acceptance under § 1325(a)(5)(A).

Debtors' counsel further argues that the Supreme Court's recent decision in *United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367 (2010), places the burden on creditors to object if treatment of their claims does not comply with the Code. Furthermore, Debtors' counsel urges that, under *Espinosa*, bankruptcy courts are required to perceive a creditor's inaction as an

implicit acceptance of the plan. The Court disagrees and does not read *Espinosa* so expansively.

In *Espinosa*, the debtor's plan proposed to repay the principal balance of a student-loan debt and to discharge the outstanding interest owed once the principal was repaid. *Id.* at 1374. A discharge of government-sponsored student loan debt is permitted only if a bankruptcy court finds that such debt will inflict an undue hardship upon the debtor. *Id.* (citing 11 U.S.C. §§ 523(a)(8), 1328). Such a finding must occur in an adversary proceeding, "which the party seeking the determination must initiate by serving a summons and complaint on his adversary. . . ." *Id.* (citing Rules 7001(c), 7003, 7004, 7008). The debtor in *Espinosa* did not initiate an adversary proceeding against the lender ("United"), thus no finding of undue hardship was made. *Id.* at 1373. The clerk of the bankruptcy court did, however, mail a copy of the debtor's plan to United. *Id.* at 1374. United replied by filing a proof of claim for an amount consisting of both the principal and interest owed. *Id.* The bankruptcy court confirmed the debtor's plan, the debtor made the necessary payments according to the terms of the plan, and the debtor received a discharge. *Id.* After several years, the United States Department of Education realized the mistake and initiated a collection process. *Id.* The debtor responded by filing a motion requesting that the court enforce the discharge order and require the lender to cease collection efforts. *Id.* The lender then filed a motion pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure to have the confirmation order set aside. *Id.* The Supreme Court held that the bankruptcy court committed legal error by confirming the plan without a finding of undue hardship, but that the confirmation order was still binding because the creditor failed to object or make a timely appeal. *Id.* at 1378.

While the facts of *Espinosa* are somewhat analogous to the present case, it is the language found in Part III of the Supreme Court's opinion, which speaks more generally about

the role of bankruptcy courts, that is most appurtenant. There, the Supreme Court instructs bankruptcy courts that they have "the authority" and "the obligation" to instruct a debtor to conform his plan with the requirements of the Code even where the creditor fails to object. *Id.* at 1381. It is this role of gatekeeper that the court adopts today. Though the issue with the debtor's plan in *Espinosa* concerned § 523(a)(8), as opposed to the failure to comply with § 1322(b)(5), the holding in *Espinosa* is equally applicable. Bankruptcy courts cannot confirm plans that do not comply with the Code simply because a creditor fails to come forward.

Going forward, the Debtors have two options. First, the Debtors may bifurcate Colonial's claim, provided that the Debtors propose to pay the secured portion of the claim in full over the life of the plan at the *Till* rate of interest.[4] Second, the Debtors may propose to treat Colonial's claim as a long-term continuing debt, whereby the Debtors agree to both continue making payments at the contractual rate specified in the mortgage note and to cure any existing arrearage during the life of the plan. The Debtors' current plan proposes to do neither. As such, because the Debtors' plan does not comply with § 1322(b)(5), the court must deny confirmation.

SO ORDERED.

---

[4] At the present time, the court makes no determination regarding the value of the Debtors' real property.

# SERVICE LIST

William Darryl Martin
Paula Parson Martin
Debtors

Edward C. Boltz
Attorney for Debtors

Matthew McKee
Attorney for Colonial Savings

Colonial Savings FA
Attn: Managing Agent
2626 West Freeway
Fort Worth, TX 76102

Richard M. Hutson, II
Trustee